Good morning, your honors. May it please the court, I'm Daniel Behrer for Detective Ray Larriva, the appellant and defendant. I'd like to reserve five minutes of my time for rebuttal. Please watch your clock. The time shown is the total time remaining. Understood, your honor. Qualified immunity for arrest and, by extension, malicious prosecution, as it has been refined over the last two years, particularly in the other sharp case, Sharp v. County of Orange, decided about three weeks after the decision in the summary judgment here, and District of Columbia v. Wesby from the U.S. Supreme Court, gives us somewhat of an advantage, even in an interlocutory appeal from the District Court, in the denial of qualified immunity summary judgment and all the rules that constrain that. Because even though the District Court found tribal issues of fact as to whether probable cause to arrest and whether malicious prosecution existed, Detective Larriva is still entitled to summary judgment on qualified immunity unless Mr. Sharp shows that the case law so established the absence of arguable probable cause. That's the standard. So let me give you what I think are... We'll just walk through this. This is what troubles me about this case. You agree that at the time that Detective Sharp, I mean, at the time that your client originally went out to the tube bending, whatever it's called, he did not have probable cause to arrest Mr. Sharp. Before he saw Mr. Sharp there? When he saw him. He saw him. He says, and put aside all fact disputes for a second. I want to get back to the fact. Let's assume that an informant told him that he had bought fireworks at that location from a light-skinned, bald man. And he goes to that location. He interviews Mr. Alvarez. Mr. Alvarez says, I'm the guy. I don't know what Mr. Alvarez looks like. We don't have anything in this record. And then he meets Mr. Sharp. And Mr. Sharp is a light-skinned, bald man who has a... who works there. Does he have probable cause to arrest him at that time? Does he definitely have probable cause or no? I'm just asking if he has probable cause. It seems to me an easy answer. The answer is no. He can't possibly have probable cause to arrest him at that time. He doesn't even think he has probable cause. I disagree, Your Honor. He says so. He says, I didn't think I had enough probable cause yet. That's what your client says. Yes, he says that. No, that's not binding on him. I understand it's not binding. So I'm asking you as a lawyer and somebody who understands probable cause, does he have probable cause at that point to arrest the first bald man that he sees? First bald, light-skinned man he sees? Yes. Yes, reasonable officers could disagree and argue that there was probable cause because he had information from a confidential informant predictive of future events, suspicious events, illegal events, and he found corroboration. He found a man who worked at the place who looked like that. What if he had found five bald men? Could he have arrested all of them? Reasonable... Your view is that reasonable detectives would have arrested every bald man they saw? They could disagree about whether or not they could, yes. Okay, that's your position. Is there a fact question in this case as to whether or not this confidential informant existed? There is not a fact question. The confidential informant appears for the first time in the depositions in this case. The district attorney, when deposed, doesn't say she was told about a confidential informant. There's no confidential informant in the police reports, correct? There is a call sheet that refers to the confidential informant, Jonathan Aguilera, along with Mr. Sharp and Mr. Alvarez. There's a call sheet that talks about going to arrest somebody, but is there anything in the call sheet that says, and the confidential informant told me that he bought from a bald, light-skinned man? No. And you agree that information was never given to the deputy county attorney? Correct. So it appears for the first time in the discovery in this case? That is the first time it appears. So doesn't that at least give rise to an inference that a reasonable finder of fact might come up with, that your client was matching the description of the perpetrator to the guy he arrested? No. It can't infer from that that the witness made up that this confidential informant existed or provided that information. Well, is there any evidence in this record other than the detective's post hoc statement that this confidential informant said that? No. But that is the testimony under oath of a witness. But the question is whether there's a fact question about that. I understand he said it. But under these circumstances where you're consulting with a county attorney, you're documenting a record and nothing, he goes out there and meets a man who's bald and meets the description and doesn't arrest him and arrests, I assume Mr. Alvarez is not bald and meets the description, but I don't know, arrests somebody else. Under those circumstances, doesn't that at least raise a reasonable question about whether or not this confidential informant actually said what he said? No. When you have a testimony from a witness under oath that this happened and you don't have any contrary evidence, the mere absence of other evidence is not sufficient. Well, there is other evidence. That's what I'm asking you. The evidence is it's not in the reports. The evidence is the district attorney testifies in a deposition, and she says that I wasn't told about that. So that's evidence. Doesn't that evidence raise a fact question? I would disagree that it raises a fact question because the people who were there at that conversation, the only one who's testified is Detective Lariva. He testified under oath the testimony of a single witness is enough to prove a fact, and there's no evidence under oath that that did not happen. So I would submit that there is no genuine dispute of fact on that fact. And the district court did not find one. So based on the information corroborated from a confidential informant and Mr. Sharp's arrest record, which the evidence shows Detective Lariva looked at before the arrest in March 2012. Okay. So let me ask you about that. So now we have, let's assume the confidential informant for a second, assume that there's not a fact question. And we have a bald guy who was arrested 15 years prior for fireworks violation, right? Right. Convicted? I don't recall whether he was convicted. Nothing in this record that says that. All right. Those three facts, do they give rise to probable cause to arrest Mr. Sharp? They give rise to arguable probable cause. At least detectives could. Isn't that, isn't it exactly the facts of Beck versus Ohio? Beck says you can't arrest somebody simply because somebody says they, because they generally meet the description of someone and they have a criminal record. Because if that were the case, you know, I watch TV all the time. It was a light, you know, it was a heavy Hispanic, five foot eight. So could you just look into criminal records and find all the heavy Hispanics that are five foot eight and arrest them all? It's not Beck versus Ohio. Beck versus Ohio did say that the arrest record and the general description were relevant to probable cause, but that's all. But not sufficient to probable cause. Not sufficient. So what do you have here more than the arrest record and the general description? You have the confidential informant who did not just give a general description of a suspect but gave information that was corroborated, specific information. Buying the fireworks out of a toy hauler at this location, gave the detective directions to that location, which showed it was a location where Mr. Sharp rented space. Mr. Sharp was the only bald, light-skinned man that Detective Lariva talked to, whether or not he was the only one who was there. Okay. And there's plenty of factual dispute in this record about whether there were other bald-skinned, bald, light-skinned men who read it, who worked at that place. Mr. Sharp declares there were other ones. Right. And like Detective Lariva's testimony, we have to take that as true. Correct, Your Honor. Okay. So maybe we don't have to take the detective's testimony as true, but surely we have to take this as true. But he didn't arrest him when he went out there. Correct, Your Honor. Okay. He investigated first. So assume he didn't have probable cause to arrest him when he went out there. Did he gain the probable cause because he learned that he had been arrested for use of fireworks 15 years before? Yes. That was another factor in the totality of circumstances. So those three facts together give you probable cause? Arguable probable cause. Because I must tell you, I've suffered through looking at this surveillance tape, and there isn't anything there that gives rise to probable cause. It's grainy. I can't tell what the person on it is doing. I can't tell what the person on it is, you know. So those three facts are the ones you've got that you think give rise to probable cause. He also talked to the DDA Chilton, and although that conversation was based on what he saw on the surveillance tape, so that's not going to be a big factor. In fact, once the prosecutor looks at the surveillance tape, she says, please, I don't have anything here. Could you address the false arrest claim? I've looked at that tape, too, and thankfully it's shorter. But I don't see any assault on a police officer there. Somebody backs up six inches and then stops the car and comes out with his hands up. How is that an assault on a police officer? The evidence is that the actual backing up took place before Mr. Sharpe's passenger started videoing the event on his cell phone. That is what Detective Anastasia testifies to. But Mr. Sharpe says he didn't. Mr. Sharpe said he did not attempt to back up towards a police officer. That's right. So why isn't there a fact question about that? Because whether or not he attempted to doesn't resolve whether he backed up while somebody was behind him and didn't look. So whether he attempted to is not resolved. If he backed up when there was somebody behind him that he didn't see and didn't know was there, would that constitute assault on a police officer? It would not constitute assault on a police officer, but somebody looking from the outside would not know that Sharpe was backing up without looking. The actions are what give rise to arguable problems. How far did he back up in your client's view? Six inches to a foot. And then stopped? Correct. And how far away from the car in your client's view was the, I guess he was actually a fire captain or a fire officer. I believe Captain Anastasia was either three or six feet behind the. So he got within three feet of him? Yes. Okay. Can I ask a question? You asked, as I understand from your position, you're emphasizing quite heavily the fact that there was only one bald, light-skinned individual that the detective encountered at the time of the seizure of the fireworks, right? Yes, spoke to. But he didn't arrest him then, and he didn't arrest him the next day if he had run a police check. Now, there's almost a full year's time. He looked at hundreds of hours of not very clear tape. Part of it's clear. At any point, does he have some obligation to confirm that he's the only tall, light-skinned, bald person? Or did he see other people on the tape who were obviously employed there? He, did he have an obligation? He was in the middle of an investigation. Did he have an obligation to investigate? Are there other tall, light-skinned, bald people working there? Or in these hundreds of hours of tapes that he relied upon, did he identify other people? He didn't testify that he identified other people. He testified that on the day that he went out there, which was the same day that the confidential informant gave him the information, Mr. Scharff was the only person who met the confidential informant's description whom he talked to. Does he have an obligation to find out if there's other bald, light-skinned men there after seeing Mr. Scharff in person multiple times? That is not a factor that would negate arguable probable cause. What if he in fact knew there were other tall, bald people because he had seen them on the tape? That would be a factor that would go into the probable cause analysis. It would not be dispositive of arguable probable cause. And I'd like to reserve the rest of my time for rebuttal, unless the panel has any other questions. Thank you, Counsel. Good morning, Your Honors. Andrew Garofalo for Appellee, Timothy Scharff. I don't think that there's any daylights between my interpretation of the standards here and appellants. Therefore, I think we can concede that the standard is correct. And the question here is whether a reasonable officer, with the knowledge that Detective Lariva had at the time that he made the arrest, could reasonably believe that there was probable cause for the arrest. So what is the knowledge that he had at the time of the arrest? What's the uncontested knowledge that he had at the time of the arrest? The appellants cite several... I don't know. I don't care what the appellants are saying. I want to know what your position is. So, well, the key evidence is obviously the videotapes. Prior to the arrest, earlier in the morning, there was a hearing in the court in which evidence was introduced that there was videotape that tended to show that evidence was planted and fireworks was planted at the site. Well, just tell me what the evidence is. There was a videotape? There's the videotape evidence. Videotape. There's the PIMS reports. He knew of your client's previous arrest. He knew of the previous arrest from the PIMS reports. Okay. He knew that your client rented space or had space at the facility where the crime allegedly occurred. Yes. There's also the alleged information from the alleged informant. Is that contested or not contested? That is contested. What facts did you introduce that makes that a contested issue? There's probable cause for the raid seemed to be based on this confidential or this informant's information that was given to Mr. Lewin. Well, the information turns out to be true. He says, I bought it at the location. He goes out there. Mr. Alvarez says, you're right, you got me. Correct. But why was, if the basis for probable cause was the information from the informant's information or the existence of the informant found in the police reports? That's a material omission. Does the absence, does that omission create a fact question or is it just as your colleague says, you got to come up with more than that? That does create an issue of fact. It's a material omission. It should be in that report and it is not. So, yes, it creates an issue of fact as to whether the informant actually existed and as to what that informant actually, what information was actually given by that informant, if any. I have to confess, I'm not entirely familiar with California criminal procedure, but is, at the time that there was the arrest and subsequent charge, is there a probable cause statement filed? In a lot of states, you have to file some kind of information or probable cause statement with the charging document. Does California require that? I don't believe there is a requirement. When's the first time the CI existence came into the case? Was it as part of a probable cause statement? Was it part of a preliminary hearing? When did they come up for the first time? I'm sorry, when did what come up for the first time? The confidential informant. When's the first time that person was identified and became a part of this case? In discovery, no? Yes, it was during discovery. It was. I believe it was at Mr. Lariva's deposition, but I am not entirely certain of that, so we would have to refer to the record. But what happened here procedurally, so I understand, is that there was an arrest and then the prosecutor declined to prosecute. Is that right? Are we talking about Mr. Sharp? Yeah. Who else do we care about? Yes, there was. Ms. Alvarez. Okay, I understand. No, what happened was the case against Alvarez was going forward. Mr. Sharp was arrested. Then the complaint was amended to add Mr. Sharp. By the assistant district attorney. Yes, correct. And you never got to a probable cause hearing? No. Because there was a dismissal before you got to that? That's correct. Okay. That's what Judge Noy and I are trying to figure out procedurally. I understand. And unless there are any other questions, I would submit on the papers. It appears not. Thank you, counsel. Thank you. Mr. Bowe. There's not much to rebut on that. I was going to say. It can't take longer to rebut than he talked to me. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Hurwitz, Melloy